UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ANTONIA TORCASIO, | : | CIVIL ACTION NO. |
| Plaintiff, | | _____ |
| | | |
| VS. | | |
| | | |
| NEW CANAAN BOARD OF EDUCATION, | : | JANUARY 11, 2015 |
| TOWN OF NEW CAANAN and | | |
| BRUCE GLUCK, | | |
| Defendants. | | |

# COMPLAINT

## INTRODUCTION

1. This is an action to redress the discriminatory and unlawful treatment suffered by the Plaintiff in violation of Title VII of the Civil Rights Act, as amended, 42 U.S.C. § 2000e, *et seq*., and the common law of the State of Connecticut.

## JURISDICTION

2. Jurisdiction of this Court is invoked under the provisions of 28 U.S.C. § 1331. Supplemental jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1367.

3. Plaintiff ("Mrs. Torcasio") filed a charge of discrimination with the Equal Employment Opportunities Commission ("EEOC") and a Notice of Intent to Sue with the New Canaan Town Clerk.

4. The matter was then forwarded by the EEOC to the Civil Rights Division of the U.S. Department of Justice, from which Mrs. Torcasio received a Right to Sue Letter dated October 14, 2014. This action is brought within 90 days of the receipt of such letter.

**PARTIES**

5.      During all times relevant to this complaint, Defendant Town of New Canaan ("Town") was a municipality in the state of Connecticut employing more than fifteen employees.

6.      During all times relevant to this complaint, Defendant New Canaan Board of Education ("BOE") was the board of education for the Town and employed more than fifteen employees.

7.      During all times relevant to this complaint, Defendant Bruce Gluck ("Mr. Gluck") was Director of Food Services of the BOE.

8.      During all times relevant to this complaint, Mrs. Torcasio resided and worked in the State of Connecticut as an employee of the BOE.

**FACTS**

9.      Mrs. Torcasio is fifty-eight (58) years of age and has been employed by the BOE food services division, as a "lunch person," for approximately twelve (12) years.

10.     Mrs. Torcasio was born in Italy and moved to the U.S.A. in 1970.  Consequently, her English language skills are limited.

11.     The food services division is made up of twenty-nine (29) female employees and four (4) male employees.

12.     During all times relevant to this complaint, Mr. Gluck was Mrs. Torcasio's director.

13.     During her employ with the BOE, especially during the period starting in January 2010 and ending in September 2013, Mrs. Torcasio and many other female employees were the subject of Mr. Gluck's persistent misconduct.

14. The misconduct entailed an assortment of behaviors, many seemingly innocuous until considered in their totality, while were others independently extremely grave.

15. While Mrs. Torcasio was not always the exclusive target of Mr. Gluck's misbehavior, the continual instances of misconduct, regardless of their target, created an overall extremely hostile working environment for Mrs. Torcasio.

16. All occurrence of misconduct were directed solely at Mrs. Torcasio or other female employees;  Mrs. Torcasio never observed Mr. Gluck treat male employees in the manner he treated female employees.

17. As better described below, Mr. Gluck's misconduct was not simply a matter of how many times he screamed, used profanities or threw objects; it revealed itself in his overall demeanor when he interacted Mrs. Torcasio and other female employees.

18. During the aforementioned period, Mr. Gluck repeatedly demeaned Mrs. Torcasio with continual, unwarranted reprimands.  He would scream insults at Mrs. Torcasio always suggesting that Mrs. Torcasio was an inferior human being who failed to understand directives.

19. During most of these same instances , Mr. Gluck would violently pound his fists on tables or desks, scream and throw papers and cloth napkins around in a very vicious and intimidating manner.

20. On several instances Mr. Gluck called Mrs. Torcasio on the telephone and while screaming, without cause repeatedly threatened to terminate her employment, repeating, "I'll fire you, do you understand me?" over and over.

21. Mr. Gluck almost always used aggressive gestures, accompanied by malicious glances and a sarcastic tone of voice when addressing Mrs. Torcasio.

22. The misconduct manifested itself in various locations such as manager meetings and in general work area.

23. Mrs. Torcasio was also subjected to listening to Mr. Gluck refer to female members of the BOE, mothers of students and female staff members, including the school principal, as "bitches," "morons" and "schmucks."  Mr. Gluck also used the words "bitch" and some form of the word "fuck" when referring to female employees.

24. On innumerable occasion, Mrs. Torcasio cried as a result of Mr. Gluck's behavior.  In fact, Mr. Gluck himself testified that Mrs. Torcasio "started to cry every time she saw me…[s]he would say…you scare me."

25. What intensified Mrs. Torcasio's fear of going to work was not only what occurred to her but what she witnessed or learned occurred to other female employees, including the following episodes as attested to by current and former female employees:

    a. Mrs. Anna Granata (former employee) states, under oath, that Mr. Gluck repeatedly screamed at her and other female employees without justification, and that she was often made to feel like an "animal."  Mrs. Granata asserts that often Mr. Gluck threw things during his outbursts and "in one instance he threw a wooden spoon on the floor but in her direction."  Mrs. Granata also states that Mr. Gluck's screaming and demeanor was so intimidating that on several occasions she urinated in her clothes due to the fear.  Mrs. Granata resigned in 2010 due to Mr. Gluck's outrageous misconduct and received therapy thereafter. She also states that she never witnessed Mr. Gluck treat male employees in the manner in which he treated female employees.

  b. The misconduct was so extreme that Mrs. Granata's husband took it upon himself to file and official complaint on behalf of his wife. Mr. Mario Granata states: "Such misconduct [of Mr. Gluck] continued to such an intolerable point that I took it upon myself to write a letter complaining of Mr. Gluck's misconduct and sent it to the then Director of Human resources. I never received any response to such letter from anyone. I also contacted my wife's Union Representative and attempted to file a grievance on her behalf, but I received cooperation."

  c. Mrs. Lucynda Graham (current employee) states, under oath, that the work environment, under the direction of Mr. Gluck, is hostile and intimidating. Employees, including herself, are degraded and that many of her coworkers perform daily duties in a state of constant fear and uncertainty. She states, "we are scolded and punished on a regular basis…I have cried many times as a result of such."

  d. Mrs. Caterina Mercuri (former employee) states, under oath, "Mr. Gluck repeatedly screamed at me and other female employees without justification and [he] used profanities…Mr. Gluck also often threw things during these outbursts. During one of such outbursts, Mr. Gluck while screaming and cursing, accosted me and in an extremely intimidating manner neared me to the point where I was pushed back and fell into a chair. Mr. Gluck continued to berate me until I began to cry. This episode was witnessed by Marie Wilson." Mrs. Mercuri goes on to attest that "Mr. Gluck's misconduct degenerated to the point where I engaged a lawyer to consider filing suit, however, such misconduct

continued to such an intolerable point that I simply resigned.  I resigned from such employment due to Mr. Gluck's outrageous misconduct towards me and other female employees…After resigning from such employ, I received therapy due to the Mr. Gluck's misconduct."

      e.      Ms. Aurea Lopez (former employee) states, under oath, that "[o]n many occasions I witnessed Mr. Gluck scream and use profanities directed at female employees.  I most of all remember him forcefully screaming at one of the secretaries by the name of Kathy."  She goes on to attest, "I also witnessed Mr. Gluck violently throw lunch meat on to the floor when angry with my female co-worker.  This episode was also witnessed by a teacher of the school who, seemingly in shock, asked Mr. Gluck to stop."

      f.      Ms. Marie Wilson (current employee) also "finally raised her voice," as Mr. Gluck himself previously testified (while under oath during a deposition in a separate matter).  Mr. Gluck admitted that he had been "exceptionally critical" with the staff and Ms. Wilson so that she "got upset with [him]…and finally raised her voice that she had had enough of the negative comments."   He went on to testify that she was very upset and screamed: "Enough, You're always negative.  Stop.  Enough.  I don't want to hear it anymore."  Regarding the same incident, Mr. Gluck admits that a "group of staff members…went to speak with the director of finance [a]nd  I believe they spoke with the human resource director.  And I was made aware that I was acting erratically."  Regaridng the same incident, in a separate affidavit, Mr. Gluck's

attests that certain "concerns" were presented to the Assistant Superintended for the New Canaan Public Schools by and on behalf of all employees.

26. During the aforementioned period, Mrs. Torcasio was also subjected to unwarranted castigation when her typical duties were replaced with other less desirable duties, such as washing dishes.

27. Other female employees were also subjected to this seemingly intentional punishment; regarding the same, Ms. Lopez stated "[r]outinely, I was sent to wash dishes for a consistent period of time as a form of (unwarranted) punishment; Mrs. Maria Quattrocchi (a former employee) also stated that dishwashing was used as a form of undeserved punishment. Mrs. Graham also stated that punishment takes the form of washing dishes kitchen for a prolonged period of time.

28. Currently, Mr. Gluck's misconduct continues notwithstanding Mrs. Torcasio's complaint to the EEOC; in her affidavit, Mrs. Graham describes the retaliation she suffered for telling the truth during the BOE's internal investigation of Mrs. Torcasio's EEOC claims: "As a result of the School's investigation into Mrs. Torcasio's EEOC complaint, on March 21, 2014, I was interviewed by an attorney for the School. During that interview, I offered a general description of the hostile work environment…The meeting was conducted in the presence of two other Food Service employees, one of them being my immediate manager. On March 31, 2014, six work days after the interview, I received a letter from Mr. Gluck informing me that I would be transferred to West School on April 7, 2014." "I believe the transfer was in retaliation for telling the truth during above mentioned interview. "

29. But most telling about Mr. Gluck's perception and consideration of his female employees are his own words under oath:"…[y]ou know, these - - a lot of the staff have come to this job

direct, you know, after their children have left home.  They have not worked outside the home.  And so I think that working for a man was intimidating, is intimidating to many of them.  I would say at this time it's probably less than a third or - - feel that way.   But it's not for any other reason that I just don't think there is - - there is a comfort level on certain people's parts dealing with a man in authority."

30. As a result of this overall intolerable work environment, Mrs. Torcasio has been on unpaid sick leave since October of 2013.

**FIRST COUNT**: (Torcasio v. BOE; Violation of Title VII, Disparate Treatment Based on Gender)

31. Paragraphs 1-30 are hereby incorporated by reference and made part of this First Count.

32. During all times relevant to this complaint, Mr. Gluck was an agent of the BOE.

33. During all times relevant to this complaint, Mr. Gluck was acting within the scope of his employment and agency powers.

34. During all times relevant to this complaint, Mr. Gluck was Mrs. Torcasio's manager.

35. During all times relevant to this complaint, Mrs. Torcasi was a member of a protected class and qualified for her position.

36. During all times relevant to this complaint, Mrs. Torcasio suffered the adverse employment actions described above including unwarranted reprimands and discipline, mental and physical intimidation and over one year of unpaid sick leave.

37. During all times relevant to this complaint, Mrs. Torcasio was treated less favorably than similarly situated individual male employees, when she was repeatedly intimidated, berated, ridiculed, demeaned, punished and reprimanded.

38. Accordingly, the BOE, as Mr. Gluck's principal, is liable for its agent's violation of Title VII of the Civil Rights Act, with intentional, knowing and/or reckless disregard of that Act's proscriptions.

**SECOND COUNT**: (Torcasio v. Town; Violation of Title VII, Disparate Treatment Based on Gender)

39. Paragraphs 1-39 are hereby incorporated by reference and made part of this Second Count.

40. Under the circumstances described above, the BOE was acting for Town purposes and as an agent of the Town.

41. During all times relevant to this complaint, Mr. Gluck was an agent of the Town.

42. During all times relevant to this complaint, Mr. Gluck was acting within the scope of his employment and agency powers.

43. Accordingly, the Town, as Mr. Gluck's principal, is liable for its agent's violations of Title VII of the Civil Rights Act, with intentional, knowing and/or reckless disregard of that Act's proscriptions.

**THIRD COUNT**: (Torcasio v. BOE; Violation of Title VII, Hostile Work Environment Sexual Harassment)

31. Paragraphs 1-30 are hereby incorporated by reference and made part of this Third Count.

32. During all times relevant to this complaint, Mr. Gluck was an agent of the BOE.

33. During all times relevant to this complaint, Mr. Gluck was acting within the scope of his employment and agency powers.

34. During all times relevant to this complaint, Mr. Gluck was Mrs. Torcasio's manager.

35. During all times relevant to this complaint, Mrs. Torcasi was a member of a protected class and qualified for her position.

36. During all times relevant to this complaint, Mr. Gluck created a hostile work environment by permeating the workplace with continual and serious intimidation, ridicule and insult directed at Mrs. Torcasio and other female employees of BOE because of their gender.

37. Mr. Gluck's misconduct was sufficiently pervasive so to alter the conditions of the Mrs. Torcasio's employment and create an abusive working environment.

38. During all times relevant to this complaint, Mr. Gluck's misconduct, as described above, was not welcomed.

39. During all times relevant to this complaint, the BOE had actual notice of Mr. Gluck's misconduct as a result of Mrs. Torcasio's and other employees' complaints made to several persons including Supervisor Marie Wilson, Bunny Potts (Principal), then union representative, then BOE director of finance, then BOE human resource director and then BOE assistant superintended.

40. During all times relevant to this complaint, the BOE had constructive notice of Mr. Gluck's misconduct, as Mr. Gluck is Mrs. Torcasio's manager.

41. Nevertheless, the BOE failed to exercise reasonable care to prevent and correct promptly the harassment even though most of its workforce consists of female employees.

42. Accordingly, the BOE, as Mr. Gluck's principal, is liable for its agent's violation of Title VII of the Civil Rights Act, with intentional, knowing and/or reckless disregard of that Act's proscriptions.

**FOURTH COUNT**: <u>(Torcasio v. Town; Violation of Title VII, Hostile Work Environment Sexual Harassment)</u>

43. Paragraphs 1-42 are hereby incorporated by reference and made part of this Fourth Count.

44. Under the circumstances described above, the BOE was acting for Town purposes and as an agent of the Town.

45. During all times relevant to this complaint, Mr. Gluck was an agent of the Town.

46. During all times relevant to this complaint, Mr. Gluck was acting within the scope of his employment and agency powers.

47. During all times relevant to this complaint, the Town had constructive notice of Mr. Gluck's misconduct, as Mr. Gluck is Mrs. Torcasio's manager.

48. Nevertheless, the Town failed to exercise reasonable care to prevent and correct promptly the harassment even though most its workforce consists of female employees.

49. Accordingly, the Town, as Mr. Gluck's principal, is liable for its agent's violations of Title VII of the Civil Rights Act, with intentional, knowing and/or reckless disregard of that Act's proscriptions.

**FIFTH COUNT:**  (Torcasio vs. Gluck; Intentional Infliction of Emotional Distress)

31. Paragraphs 1-30 of Count One are hereby incorporated by reference and made part of this Fifth Count.

32. Given his outrageous misconduct described above, which include screaming, punding of fists, an throwing objects on several occasions during the aforementioned period, Mr. Gluck intentionally caused distress of Mrs. Torcasio knowing that distress might result in illness or bodily harm.

33. Mrs. Torcasio has in fact suffered emotional distress as a direct result of Mr. Gluck's

conduct.

34. During all times relevant to this count, Mr. Gluck was an agent of the BOE acting within the scope of his agency powers.

**SIXTH COUNT :** (Torcasio v. BOE; C.G.S. § 10-235)

35. Paragraphs 1-30 of facts are and 31 to 34 of the Fifth Count are hereby incorporated by reference and made part of this Sixth Count.

36. During all times relevant to this complaint, Mr. Gluck was an "employee" of the BOE, as the term is defined by Connecticut General Statutes § 10-235.

37. During all times relevant to this complaint, Mr. Gluck was acting within the scope of his employment and agency powers.

38. Pursuant to Connecticut General Statutes § 10-235, the BOE is liable for the indemnification of any damages caused by members Mr. Gluck to Mrs. Torcasio resulting from Gluck's intentional infliction of emotional distress.

39. During all times relevant to this complaint, the BOE's governmental immunity, *if applicable*, was abrogated by Conn. Gen. Stat. § 52–577n.

**SEVENTH SCOUNT**: (Torcasio v. BOE, Negligent Supervision; Direct Liability)

31. Paragraphs 1-30 are hereby incorporated by reference and made part of this Seventh Count.

32. For several years the BOE had actual and constructive notice of Mr. Gluck's misconduct, as described above.

33. Notwithstanding such knowledge, the BOE did not act to remedy or prevent Mr. Gluck's misconduct.

34.    It was reasonably foreseeable that without supervision by the BOE, such misconduct would continue to harm Mrs. Torcasio and other employees.

35.    Such lack of supervision caused harm to Mrs. Torcasio.

36.    During all times relevant to this complaint, the BOE's governmental immunity, *if applicable*, was abrogated by Conn. Gen. Stat. § 52–577n.

**EIGHT COUNT**: (Torcasio v. Town, Negligent Supervision; Direct Liability)

31.    Paragraphs 1-30 are hereby incorporated by reference and made part of this Eight Count.

32.    For several years the Town had actual and constructive notice of Mr. Gluck's misconduct, as described above.

33.    Notwithstanding such knowledge, the Town did not act to remedy or prevent Mr. Gluck's misconduct.

34.    It was reasonably foreseeable that without supervision by the Town, such misconduct would continue to harm Mrs. Torcasio and other employees.

35.    Such lack of supervision caused harm to Mrs. Torcasio.

36.    During all times relevant to this complaint, the Town'ss governmental immunity, *if applicable*, was abrogated by Conn. Gen. Stat. § 52–577n.

WHEREFORE, Plaintiff claims judgment against the Defendant as follows:

1. Back pay and front pay in an amount to be determined by the trier of fact with interest from the date said sum was due;

2. Compensatory damages in an amount to be determined by the trier of fact;

3. Punitive damages in an amount to be determined by the trier of fact;

4. An injunction permanently enjoining Defendants, its officers, agents, employees, successors, assigns and all persons in active concert of participation with them from engaging in any employment practice which discriminates on the basis of sex;

5. Attorney's fees and costs of this action; and

6. Such further relief as this Court deems necessary and proper.

                THE PLAINTIFF

By_____/s/_____
   Riccardo L. Pate, Esq.
   155 Post Road East
   Westport, CT 06880
   (203) 226-9922
   Federal Bar No.  ct 15057

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ANTONIA TORCASIO,                                    :           CIVIL ACTION NO.
    Plaintiff,                                                                   _____

VS.

NEW CANAAN BOARD OF EDUCATION,    :           JANUARY 11, 2015
TOWN OF NEW CAANAN and
BRUCE GLUCK,
    Defendants.

## **REQUEST FOR TRIAL BY JURY**

Plaintiff hereby requests trial by jury in the above captioned matter.

THE PLAINTIFF

By_____/s/_____
    Riccardo L. Pate, Esq.
    155 Post Road East
    Westport, CT 06880
    (203) 226-9922
    Federal Bar No.  ct 15057