```
                UNITED STATES DISTRICT COURT
                  DISTRICT OF CONNECTICUT

-------------------------------- x
ANTONIA TORCASIO,                :
                                 :
        Plaintiff,               :
                                 :
v.                               :   Civil No. 3:15-cv-0053(AWT)
                                 :
NEW CANAAN BOARD OF EDUCATION,   :
TOWN OF NEW CANAAN, and BRUCE    :
GLUCK,                           :
        Defendants.              :
-------------------------------- x
```

**ORDER RE MOTION FOR SUMMARY JUDGMENT**

The plaintiff's eight-count complaint against the defendants contains the following claims: in the First Count, a claim against the New Canaan Board of Education (the "Board") for disparate treatment based on gender in violation of Title VII of the Civil Rights Act, as amended, 42 U.S.C. § 2000e <u>et seq</u>. ("Title VII"); in the Second Count, a claim against the Town of New Canaan (the "Town") for disparate treatment based on gender in violation of Title VII; in the Third Count, a claim against the Board for hostile work environment based on sexual harassment in violation of Title VII; in the Fourth Count, a Title VII hostile work environment claim against the Town; in the Fifth Count, a claim against Bruce Gluck ("Gluck") for intentional infliction of emotional distress; in the Sixth Count, a claim against the Board pursuant to Conn. Gen. Stat. § 10-235 for indemnification; in the Seventh Count, a claim

against the Board for negligent supervision; and in the Eighth Count, a claim against the Town for negligent supervision.

The court previously dismissed the Seventh and Eighth Counts. See Doc. No. 54. The defendants have moved for summary judgment as to all remaining counts, and in her opposition to the motion for summary judgment, the plaintiff withdrew the Second and Fourth Counts. For the reasons set forth below, the Motion for Summary Judgment (Doc. No. 104) is hereby GRANTED with respect to the Second and Fourth Counts, and DENIED with respect to the First, Third, Fifth and Sixth Counts.

A.  **Disparate Treatment Against the Board (First Count)**

The plaintiff has the initial, de minimus burden to establish a prima facie case that: (1) she is a member of a protected class; (2) she was qualified for the job or was performing her duties in a satisfactory manner; (3) she was subjected to an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination on the basis of her membership in that class. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Although the plaintiff has the burden of proof at this stage, the burden is "minimal." Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 101 (2d Cir. 2001).

If the plaintiff meets her initial burden, then the defendant has the burden to produce a non-discriminatory, legitimate reason for the employment decision "to defeat a rebuttable presumption of discrimination." Id. at 102. "[S]hould the defendant meet this burden of production, the plaintiff must then prove by a preponderance of the evidence that the legitimate reason offered by the employer is merely a pretext for discrimination." Proctor v. MCI Comm. Corp., 19 F. Supp. 2d 11, 14 (D. Conn. 1998) (citing McDonnell Douglas, 411 U.S. at 804).

In support of their motion for summary judgment, the defendants argue, with respect to the third element, that the plaintiff was not subjected to an adverse employment action, and with respect to the fourth element, that the plaintiff was not treated differently than similarly situated male employees.

The plaintiff contends that she suffered an adverse employment action when she took an unpaid leave of absence as a result of Gluck's intentional misconduct. "In the discrimination context courts find that being required to take unpaid leave can be an adverse employment action." St. Juste v. Metro Plus Health Plan, 8 F. Supp. 3d 287, 318 (E.D.N.Y. 2014).

The defendants argue that the unpaid leave was not an adverse action because Torcasio requested the leave. Torcasio concedes she requested the leave, but argues she did so

-3-

"involuntarily," "as a result of Gluck's intentional misconduct," and thus the unpaid leave amounts to an adverse employment action. Pl.'s Mem. (Doc. No. 122) 14. Torcasio's argument is analogous to one based on constructive termination. "Adverse employment actions include . . . . 'constructive' discharge." Fitzgerald v. Henderson, 251 F.3d 345, 357 (2d Cir. 2001) (citations omitted). "Constructive discharge of an employee occurs when an employer, rather than directly discharging an individual, intentionally creates an intolerable work atmosphere that forces an employee to quit involuntarily." Id. at 357-58.

After review of the record, the court concludes that genuine issues of material fact exist as to whether Torcasio suffered an adverse employment action by virtue of the fact that her request for unpaid leave was involuntary.

With respect to the fourth element, the defendants argue that any adverse employment action did not occur under circumstances giving rise to an inference of discrimination because Torcasio was not treated differently than similarly situated male employees. However, showing she was treated less favorably than similarly situated employees is not the only way a plaintiff can establish this element. Rather, "the inference of discriminatory intent could be drawn in several circumstances including, but not limited to: . . . 'the employer's criticism

-4-

of the plaintiff's performance in . . . degrading terms; or [his] invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the [adverse employment action].'" Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 468 (2d Cir. 2001) (quoting Chambers v. TRM Copy Ctrs Corp., 43 F. 3d 29, 37 (2d Cir. 1994)).

The evidence shows Gluck mistreated many or all of his employees, but the plaintiff has created a genuine issue of material fact as to whether Gluck mistreated female employees to a greater extent than males, even when taking into account the gender demographics of the staff, which was disproportionately female. This evidence is also sufficient to create a genuine issue of material fact with respect to the third step of the McDonnell Douglas analysis, i.e. whether the legitimate reason given by the employer is merely a pretext for discrimination.

**B.   Hostile Work Environment (Third Count)**

A plaintiff must show "not only that she subjectively perceived the environment to be abusive, but also that the environment was objectively hostile and abusive." Demoret v. Zegarelli, 451 F.3d 140, 149 (2d Cir. 2006). In determining whether a hostile work environment exists, courts look to several factors, including "the frequency of the discriminatory

conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Sys., 510 U.S. 17, 23 (1993). "Isolated incidents or episodic conduct will not support a hostile work environment claim." Richardson v. NYS Dep't. Corr. Serv., 180 F.3d 426, 437 (2d Cir. 1999). "Rather, the plaintiff must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment." Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002) (quoting Cruz v. Coach Stores, Inc., 202 F.3d 560 (2d Cir. 2000)). Thus, "to prevail on a hostile work environment claim, the plaintiff must show that the workplace was permeated with discriminatory intimidation, ridicule, or insult that was sufficiently severe or pervasive to alter the conditions of her employment." Newtown v. Shell Oil Co., 52 F. Supp. 2d 366, 372 (D. Conn. 1999).

"Because the crucial inquiry focuses on the nature of the workplace environment as a whole, a plaintiff who herself experiences discriminatory harassment need not be the target of other instances of hostility in order for those incidents to support her claim." Cruz, 202 F.3d at 570. "[O]ne of the critical inquiries in a hostile environment claim must be the

environment. Evidence of a general work atmosphere . . .—as well as evidence of specific hostility directed toward the plaintiff— is an important factor in evaluating the claim." Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2d Cir. 1997). "Evidence of the harassment of women other than [the plaintiff], if part of a pervasive or continuing pattern of conduct, was surely relevant to show the existence of a hostile environment . . . ." Id. at 151.

Assessing the record in the light most favorable to the plaintiff and drawing all reasonable inferences in her favor, the court concludes that the plaintiff created a genuine issue of material fact with respect to each of the elements for a hostile work environment claim.

C.  **Intentional Infliction of Emotional Distress (Fifth Count)**

To prevail on a claim for intentional infliction of emotional distress, the plaintiff must establish four essential elements:

> (1) that the actor intended to inflict the emotional distress, or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe.

Appleton v. Bd. of Educ., 254 Conn. 205, 210 (2000). Whether a defendant's conduct satisfies the requirement that it be extreme

-7-

and outrageous is initially a question for the court to decide. See id. "Only where reasonable minds disagree does it become an issue for the jury." Bombalicki v. Pastore, 71 Conn. App. 835, 839-840 (2002) (quotation marks omitted).

The defendants argue that Gluck's conduct was not extreme and outrageous. Viewing the evidence in the light most favorable to the plaintiff and drawing all reasonable inferences in her favor, the court concludes that reasonable minds could disagree about whether Gluck's conduct in the aggregate, as opposed to assessing each claimed action in isolation, was extreme and outrageous. The record includes: evidence that Gluck knew his interactions with the plaintiff and other employees made them upset, but continued such behavior, see e.g., Pl.'s Local R. 56(a)(2) Stmt. ¶ 73 (Gluck stated that Torcasio "started to cry every time she saw me . . . [s]he would say . . . you scare me." (alteration in original)); evidence that Gluck laughed and boasted about making employees cry, see Pl.'s Mem. at 8-11, 17; and evidence that Gluck laughed when he received complaints about his behavior, see id.

Genuine issues of material fact also exist with respect to the other elements of this claim.

D.   **Statutory Indemnification (Sixth Count)**

Because summary judgment is being denied as to the First, Third and Fifth Counts, it is also being denied as to this count.

It is so ordered.

Signed this 20th day of March, 2017, at Hartford, Connecticut.

                                                        /s/ AWT\
                                           Alvin W. Thompson\
                                           United States District Judge